OPINION
{¶ 1} Plaintiff-appellant, David Applegate, appeals from the judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment in favor of defendants-appellees, Northwest Title Company ("Northwest Title"), and the Title Link ("Title Link"),[1] and also in favor of defendants-appellees, Arleen Williams ("Williams") and RE/MAX First, Ltd. ("RE/MAX").
 {¶ 2} This case arises from the sale of a home jointly owned by appellant and his former wife, Susan Applegate ("Mrs. Applegate"). Pursuant to a provision contained in their divorce decree, the couple was required to sell their former marital residence and divide the net proceeds equally. The couple signed a listing agreement with RE/MAX and its agent, Williams. Subsequently, Mrs. Applegate executed an assignment of all her interest in the proceeds from the sale of the home to her domestic relations attorney, Ruthellen Weaver ("Weaver"); Mrs. Applegate made Williams aware of this assignment, but, according to appellant, he was not aware of same until several years after the closing on the sale. At the closing, which appellant did not attend, all of the net proceeds of the sale (not just those to which Mrs. Applegate was entitled pursuant to the divorce decree) were distributed to Weaver.
 {¶ 3} In his complaint, appellant asserts counts sounding in breach of contract and fraudulent misrepresentation[2]
against all appellees. The crux of his fraudulent misrepresentation claims is that, on separate occasions, Williams and Cindy Henretta ("Henretta"), a manager at Northwest Title and Title Link, assured appellant that all closing proceeds would be "escrowed" with Northwest Title pending later distribution to appellant and Mrs. Applegate. He further alleges that, in conjunction with her assurances that the sale proceeds would be escrowed, Williams suggested that appellant pre-sign all closing documents and not attend the closing. Appellant seeks recovery of his share of the net proceeds of the sale (which he alleges amount to approximately $7,200), plus damages for anxiety and embarrassment, as well as his legal fees.
 {¶ 4} All appellees filed motions for summary judgment, which were sustained in their entirety by the court of common pleas. With respect to the breach of contract claims, the trial court found that no evidence exists demonstrating that appellant had any contractual relationship with Northwest Title or Title Link. The court found that, even if appellant's allegations against Williams and RE/MAX were true, they are wholly outside the scope of the obligations contained in the listing agreement, and as such, do not constitute a breach of that agreement. With respect to the fraudulent misrepresentation claims, the court found that appellant had put forth no evidence that any of the appellees made any representations to appellant with knowledge of their falsity, with reckless disregard as to their truth or falsity, or with intent to induce appellant to rely on such representations. Accordingly, the trial court granted summary judgment to all appellees and dismissed appellant's complaint in its entirety.
 {¶ 5} In this appeal, appellant asserts one assignment of error for our review:
The trial court erred by granting the defendants (sic) motions for Summary Judgment and dismissing the plaintiffs (sic) case without a trial.
 {¶ 6} We begin by recalling the standard of review of a trial court's grant of summary judgment. We conduct a de novo review, without deference to the trial court. Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38. In conducting our review, this court applies the same standard as that employed by the court below.Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103,107, jurisdictional motion overruled (1993), 66 Ohio St.3d 1488. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd.
(1997), 78 Ohio St.3d 181.
 {¶ 7} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on the essential element(s) of the nonmoving party's claims. Dresher v.Burt (1996), 75 Ohio St.3d 280, 292.
The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to someevidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Id. at 293. (Emphasis sic.)
 {¶ 8} First, we review the trial court's grant of summary judgment as to appellant's claims for breach of contract. On appeal, appellant argues that his breach of contract claim against Northwest Title and Title Link is based upon an oral contract, and upon some sort of implied contract imposing obligations upon these defendants, "to perform the closing disbursements correctly and according to the requests of sellers." (Brief of appellant, 11.) He relies principally on Henretta's alleged oral promise to escrow the proceeds of the sale as the basis for his breach of contract claim against Northwest Title and Title Link.
 {¶ 9} The elements of a contract include an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration. LakeLand Empl. Group of Akron, L.L.C. v. Columber,101 Ohio St.3d 242, 2004-Ohio-786, ¶ 14, citing Kostelnik v. Helper,96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. Courts generally determine the existence of a contract as a matter of law. State ex rel.Horvath v. State Teachers Retirement Bd. (Apr. 29, 1997), Franklin App. No. 96APE08-983, citing Latina v. Woodpath Dev.Co. (1991), 57 Ohio St.3d 212. The court of common pleas granted summary judgment on appellant's breach of contract claim against Northwest Title and Title Link because it found no evidence of a contractual relationship between appellant and either of these entities.
 {¶ 10} An escrow is a matter of agreement between parties, usually evidenced by a writing placed with a third-party depositary providing certain terms and conditions the parties intend to be fulfilled prior to the termination of the escrow.Pippin v. Kern-Ward Bldg. Co. (1982), 8 Ohio App.3d 196, 198. The depositary under an escrow agreement is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands. Id., citing Squire v.Branciforti (1936), 131 Ohio St. 344. "[I]f an escrow agent neglects to carry out the instructions of a party to the escrow agreement, liability will result for the damages induced thereby." 20 Ohio Jurisprudence 2d 215, Escrows, § 8.
 {¶ 11} Like the trial court, we cannot, upon a review of the record, find evidence of the existence of a contract respecting an escrow of funds, or any other subject, between appellant and Northwest Title or Title Link. Henretta's alleged promise that funds would be escrowed, without more, did not create a contract between appellant and the title companies, whether or not appellant relied on the alleged promise to his detriment. Accordingly, the trial court correctly granted summary judgment to Northwest Title and Title Link on appellant's breach of contract claims.
 {¶ 12} The court of common pleas also granted summary judgment to Williams and RE/MAX on appellant's breach of contract claims, finding that the allegations in appellant's complaint, even if true, do not constitute breach of the listing agreement. The court found no other contract between appellant and RE/MAX, or between appellant and Williams. On appeal, as he did in the court below, appellant bases his breach of contract claims against Williams and RE/MAX upon his allegations that Williams misrepresented that the closing proceeds would be held for disbursement to him and Mrs. Applegate, and that appellant's one-half share of the proceeds was not, in fact, disbursed to him.[3] However, as a matter of law, this alone is insufficient to establish the formation of a contract. See LakeLand Empl. Group, supra. Furthermore, the trial court was correct in finding that any alleged misrepresentation made by Williams regarding the handling of the sale proceeds was not a breach of the language of the listing agreement. Accordingly, the court of common pleas correctly granted RE/MAX and Williams summary judgment on appellant's breach of contract claims.
 {¶ 13} Next, we review the trial court's grant of summary judgment as to appellant's claims for fraudulent misrepresentation. The elements of a cause of action for fraudulent misrepresentation are: (a) a representation, or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation, and (f) a resulting injury proximately caused by the reliance. Brewer v. Brothers (1992), 82 Ohio App.3d 148,153; Brothers v. Morrone-O'Keefe Dev. Co., LLC, 2003-Ohio-7036, Franklin App. No. 03AP-119; Taris v. Brown (Feb. 20, 1996), Franklin App. No. 95APE08-1075.
 {¶ 14} With respect to appellant's claims for fraudulent misrepresentation, the trial court found:
Review of the record reveals no evidence that Defendants made any representation to Plaintiff with knowledge of its falsity or with such utter disregard for the truth of falsity of the statement that knowledge could be inferred. Furthermore, the record is devoid of evidence that any Defendant made a representation to Plaintiff with the intent of misleading Plaintiff into relying on the representation.
(Decision Granting Motions for Summary Judgment, 5.)
 {¶ 15} In their motion for summary judgment, Northwest Title and Title Link argued that there is no "admissible" evidence that Henretta made any representations to appellant that closing proceeds would be escrowed, and that there is no evidence that she made any representation to appellant with knowledge of the falsity thereof. They also argued that appellant's fraudulent misrepresentation claim fails as a matter of law because it is based on a statement concerning a future act.
 {¶ 16} They attached to their motion the affidavits of Henretta and Weaver. In Henretta's affidavit, she avers that she never agreed to escrow the sale proceeds on behalf of appellant. She further avers that, as a matter of practice, Northwest Title and Title Link do not escrow proceeds of sales of residential properties in order to disburse them to sellers.
 {¶ 17} In her affidavit, Weaver avers that she gave testimony in a bankruptcy proceeding wherein appellant was the debtor. Attached to her affidavit, and incorporated therein, are a judgment entry and an opinion journalized in the bankruptcy proceeding. The judgment entry is signed by the Honorable Donald E. Calhoun, Jr., judge of the United States Bankruptcy Court, Southern District of Ohio, Eastern Division. In substance, the entry and opinion set forth the court's finding that appellant's spousal support obligation to Mrs. Applegate, totaling approximately $15,700, is nondischargeable in bankruptcy because, the bankruptcy court found, Mrs. Applegate made no express assignment of any right to future support payments. The opinion makes mention of evidence that the proceeds for the marital home were given to Weaver in trust. It is not clear, from a reading of the motion for summary judgment, what relevance Northwest Title and Title Link ascribe to the bankruptcy court's opinion in connection with their pursuit of summary judgment. We can only speculate that, in using this document, these movants sought to demonstrate that appellant's reliance upon any representations by Henretta was not reasonable, since he should have known that he owed Mrs. Applegate monies totaling more than one-half of the net proceeds from the sale of the marital residence. However, we note that the bankruptcy court's opinion was signed in January 2003, over four years after the closing occurred. Thus, this opinion is not relevant to the reasonableness of any reliance on the part of appellant.
 {¶ 18} RE/MAX and Williams filed a motion for summary judgment that simply incorporated therein the arguments asserted by Northwest Title and Title Link. RE/MAX and Williams attached no evidentiary materials to their motion, and did not direct the court to any particular portion of the record.
 {¶ 19} Appellant filed with the trial court a memorandum in opposition to both motions. His argument regarding his fraudulent misrepresentation claim is unclear; however, he attached thereto his own affidavit, wherein he avers, in part, as follows:
5. * * * Ms. Henretta identified her (sic) herself as the closing officer at Northwest Title Company. She further told me all funds that were due the sellers would be held in the Northwest Title Company escrow account. Henretta proceeded to fax me a closing statement, exhibit A attached. That closing statement indicated there was $16,243. (sic) due sellers. Henretta said that this amount would be escrowed by Northwest Title Company. I was to share equally with my former spouse the sellers (sic) proceeds or half of $16,243. I believed and relied on what Ms. Henretta had told me.
5a. In Ms. Henretta's deposition taken by my attorney and filed with this court, Ms. Henretta testified under oath that shemight have had a conversation with me about the escrow agreementbut did not remember the details of the conversation. She further testified that she has many conversation with customers and cannot remember all of them. Now all of a sudden in her affidavit she claims to now remember these conversations and now states that she did not agree to escrow any funds due the sellers. This is totally false. The reason I did not attend the closing was completely due to the representations of Ms. Henretta and Ms. Williams.
6. I later learned that no funds were escrowed by Northwest Title Company or anyone else and that all of the owner's (sic) proceeds were disbursed at the closing without my knowledge or approval to my former wife's divorce attorney, Ruthellen Weaver.
7. I have never been paid for my owner's portion or half of $16,243. (sic) from the real estate closing.
8. I have spent thousands upon thousands dollars (sic) in legal fees and expenses in various courts to recover these funds.
9. I have been charged with criminal and civil non support in part because this money was withheld from me. I was indicted for criminal non support.
(Emphasis sic.)
 {¶ 20} In his brief filed in the present appeal, appellant again points to his own affidavit filed with his memorandum in opposition to the appellees' motions for summary judgment. He also directs our attention, generally, to the deposition testimony of Henretta. He argues this demonstrates that summary judgment was not warranted.
 {¶ 21} In their briefs, appellees argue that appellant's fraudulent misrepresentation claims fail as a matter of law because they are based upon misrepresentations of a future fact. They cite case law holding that fraud may only be based on representations about past or present facts. Appellees' argument is inexpedient. It is true that fraud claims, generally, cannot be predicated upon promises or representations relating to future actions or conduct. Tibbs v. Natl. Homes Constr. Corp. (1977),52 Ohio App.2d 281, 286. However, an exception, or extended application, of this rule is the instance of the actor who makes a promise of future action, occurrence or conduct, and who, at the time he or she makes it, has no intention of keeping the promise. Id. at 287. "In such case, the requisite misrepresentation of an existing fact is said to be found in the lie as to his existing mental attitude and present intent." Id. See, also, Dozier v. Keller (1944), 73 Ohio App. 321; Martinv. Ohio State Univ. Found. (2000), 139 Ohio App.3d 89; Rodgersv. Custom Coach Corp. (June 22, 2000), Franklin App. No. 99AP-1167; Hancock v. Longo (Oct. 14, 1999), Franklin App. No. 98AP-1518; Coal Resources, Inc. v. Gulf Western Indus., Inc.
(C.A. 6, 1985), 756 F.2d 443, 446 (applying Ohio substantive law.)
 {¶ 22} "One who fraudulently makes a representation of * * * intention * * * for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." 4 Restatement of the Law 2d, Torts (1977), Section 525. A representation of the state of mind of the maker, or that of a third person, is a misrepresentation if the state of mind in question is otherwise than as represented. Id. at Comment c. Thus, a statement that a particular person has a particular intention is a misrepresentation if the person in question does not have the intention asserted. Id. "Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraudulent and actionable in deceit under the rule stated in § 525. This is true whether or not the promise is enforceable as a contract." 4 Restatement of the Law 2d, Torts (1977), Section 530, Commentc. The intention may be shown by circumstantial evidence, not including the fact of nonperformance. Id. at Comment d.
 {¶ 23} Under the foregoing principles, appellant may sustain his causes of action for fraudulent misrepresentation by proof that appellees made representations to him that his share of the proceeds of the closing would be held and distributed to him, and that, at the time the representations were made, appellees did not intend to so hold and distribute the proceeds. He must also prove materiality to the transaction, intent to mislead, justifiable reliance, and damages. But, contrary to appellees' assertions, appellant's claims do not fail as a matter of law simply because they are based upon promises of future conduct.
 {¶ 24} Northwest Title and Title Link also argue that the only evidence that was properly before the trial court on the claim against them for fraudulent misrepresentation is Henretta's affidavit in which she states she never made representations regarding holding and disbursement of closing proceeds. These appellees argue that appellant's averment in his affidavit that Henretta did make such representations is inadmissible hearsay not properly considered by the court. This argument, too, is unavailing.
 {¶ 25} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, appellant did not offer Henretta's alleged misrepresentations that the closing funds would be held and distributed to him and Mrs. Applegate, for proof of the matter asserted. In fact, appellant's fraud claims are based upon the alleged falsity of these statements. Instead, appellant offered the alleged misrepresentations solely to demonstrate that they were made. Therefore, appellant's statements in his affidavit, regarding alleged misrepresentations by Henretta, are not hearsay. Rather, they are admissible as "verbal acts," offered only to prove the fact of the representation, not the truth of the statements contained therein. See Tinnes v.Immobilaire IV, Ltd. (Feb. 13, 2001), Franklin App. No. 00AP-87, discretionary appeal not allowed (2001), 92 Ohio St.3d 1432;Savage v. Residenz Realty (Oct. 10, 1997), Greene App. No. 96-CA-150. Accordingly, appellant's statements in his affidavit regarding Henretta's (and Williams') alleged pre-closing representations regarding the post-closing handling of the sale proceeds, are properly considered in passing upon appellees' summary judgment motions.
 {¶ 26} We have thus arrived at the final step in our review of the trial court's grant of summary judgment to appellees on appellant's claims for fraudulent misrepresentation. We must employ the same burden-shifting analysis under Civ.R. 56 andDresher v. Burt, supra, that the trial court was required to perform, taking into account the evidence that each party presented.
 {¶ 27} First, we must determine whether the moving parties discharged their initial burden of, "informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element" of appellant's claim. Dresher, supra, at 292.
 {¶ 28} In their motion, Williams and RE/MAX asserted two arguments: (1) appellant's claims fail because they are based upon a misrepresentation regarding a future fact; and (2) there is no evidence that Williams and RE/MAX made any representation to appellant that the proceeds of the real estate sale would be held and disbursed equally to the sellers. Williams and RE/MAX point to no portion of the record, and no evidence of the type listed in Civ.R. 56(C) to support their motion.
 {¶ 29} Pursuant to our discussion above, Williams' and RE/MAX's first argument fails. With respect to the second argument, under Dresher, the party moving for summary judgment may not discharge its initial burden under Civ.R. 56 by making a conclusory assertion that the nonmoving party has no evidence to prove its case.
Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.
Dresher, supra, at 293. This is precisely the manner in which Williams and RE/MAX undertook to pursue summary judgment. They made a conclusory assertion that appellant could produce no evidence to prove his case, yet they pointed to no evidence of the type listed in Civ.R. 56(C) to demonstrate such a lack of evidence. As such, Williams and RE/MAX did not satisfy their initial burden under Civ.R. 56. Thus, the burden never shifted to appellant under Civ.R. 56(E).[4] Therefore, the trial court's grant of summary judgment to Williams and RE/MAX on appellant's fraudulent misrepresentation claim was erroneous.
 {¶ 30} In their motion for summary judgment, Northwest Title and Title Link asserted the same two arguments asserted by Williams and RE/MAX, with respect to appellant's fraudulent misrepresentation claim. They also attached the Henretta affidavit, in which Henretta denies having ever promised appellant that the closing proceeds would be escrowed and distributed to the sellers. She also avers that the title companies never escrow closing proceeds for distribution to sellers. As previously noted, the first argument fails because Ohio does recognize a cause of action for fraudulent misrepresentation based upon a representation of an intention to do a future act, or "promissory fraud."
 {¶ 31} The second argument asserts that appellant can put forth no evidence that Henretta made any representation about the escrow of the closing proceeds. In their motion for summary judgment, Northwest Title and Title Link argue that there is no evidence, "of a representation by these Defendants that they would hold money in escrow for Plaintiff, much less a representation made with knowledge of its falsity." This argument, coupled with the Henretta affidavit, satisfied Northwest Title's and Title Link's initial burden of informing the trial court that appellant could not establish the first and third elements of a cause of action for fraudulent misrepresentation, namely, that a representation was made, and that it was made with knowledge of its falsity. See Carpenter v.Scherer-Mountain Ins. Agency (1999), 135 Ohio App.3d 316, 327.
 {¶ 32} The burden then shifted to appellant to, "set forth specific facts showing that there is a genuine issue for trial" as to the two elements of his fraudulent misrepresentation claim addressed and supported in the title companies' motion. Civ.R. 56(E). Appellant met his reciprocal burden with respect to the first element; that is, the existence of a representation. As reprinted hereinabove, appellant averred in his affidavit that Henretta told him that all funds due him and Mrs. Applegate would be held in the Northwest Title escrow account following the closing.
 {¶ 33} In their reply memorandum filed with the trial court, the title companies argue that appellant's affidavit should not be considered because it does not specifically state that it was made upon personal knowledge, as required by Civ.R. 56(E). That section of the rule requires that affidavits filed in support of or in opposition to summary judgment must be made on personal knowledge. State ex rel Cassels v. Dayton City School Dist. Bd.of Edn. (1994), 69 Ohio St.3d 217, 223. In Brannon v. Rinzler
(1991), 77 Ohio App.3d 749, 756, the court defined "personal knowledge" as "knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay. * * *" An affidavit without an averment of personal knowledge must demonstrate personal knowledge specifically. Equitable Assurance Corp. v. Kuss (1984),17 Ohio App.3d 136, 138.
 {¶ 34} Appellant's affidavit does not specifically aver that his statements were based on personal knowledge. However, it has been held that personal knowledge may also be inferred from the contents of an affidavit. Bush v. Dictaphone Corp., 2003-Ohio-883, Franklin App. No. 00AP-1117, discretionary appeal not allowed, 99 Ohio St.3d 1453, 2003-Ohio-3396; BeneficialMtge. Co. v. Grover (June 2, 1983), Seneca App. No. 13-82-41. We find that appellant's personal knowledge may be inferred from the contents of his affidavit. Therein, he states that he was the owner of the specific residential real estate subject of the sale that gave rise to this action. He makes other averments that relate to occurrences with which appellant was personally involved, and does not rely on any hearsay or information obtained through sources other than various methods of personal observation.
 {¶ 35} The only exceptions to this are statements contained in paragraphs 5a and 6 of the affidavit, in which appellant discusses what Henretta said at her deposition, and he says that he "later learned" that no funds were escrowed and that all proceeds were distributed to Weaver. These statements are not properly the subject of an affidavit, as they do not demonstrate that they are based upon personal knowledge. But appellant goes on to state, in a way that demonstrates personal knowledge, that he has never been paid his portion of the proceeds of the sale of his former marital residence. Therefore, with the exception of a portion of paragraph 5a, and all of paragraph 6 of appellant's affidavit, the affidavit was made upon personal knowledge and was thus properly considered in determining the merits of the title companies' motion for summary judgment.
 {¶ 36} Moreover, the affidavit sufficiently allows appellant to meet his burden under Civ.R. 56(E) regarding the first element of his fraudulent misrepresentation claim against the title companies. In Killilea v. Sears, Roebuck Co. (1985),27 Ohio App.3d 163, this court ruled that, "if an issue is raised on summary judgment, which manifestly turns on the credibility of the witness because his testimony must be believed in order to resolve the issue, and the surrounding circumstances place the credibility of the witness in question — for example, where the potential for bias and interest is evident — then, the matter should be resolved at trial, where the trier of facts has an opportunity to observe the demeanor of the witness." Id. at 167. In this case, the issue of whether Henretta made a representation regarding the holding of the sale proceeds turns on the dueling affidavits of Henretta and appellant, whose unequivocal averments present diametrically opposite versions of relevant events. The potential for bias or interest is evident as to both affiants. Thus, this matter should be resolved at trial, where the trier of fact will have the opportunity to observe the demeanor of these witnesses and conduct a thorough appraisal of the credibility of each.
 {¶ 37} Appellant also had a burden, pursuant to Civ.R. 56(E), to demonstrate a genuine factual dispute with respect to the third element of fraudulent misrepresentation; that is, that Henretta knew that her statement was false (because she knew that Northwest Title had no intention of escrowing the funds), or that she made the statement with utter disregard or recklessness as to truth or falsity of the statement such that knowledge will be inferred.
 {¶ 38} In her deposition, Henretta admitted that she had several conversations with appellant prior to the closing. Also, as she stated in her affidavit, she testified that Northwest Title and Title Link never escrow funds from the sale of residential real estate except in cases where funds are held for the payment of repairs to the home. This statement, construed in a light most favorable to appellant, is evidence that supports appellant's claim that, if, during her pre-closing conversations with appellant Henretta did make the alleged representations, she did so with knowledge that Northwest Title and Title Link never had any intention of escrowing the sale proceeds. Accordingly, appellant did satisfy his burden under Civ.R. 56(E) with respect to the third element of his claim for fraudulent misrepresentation against the title companies. On the current state of the record, the trial court erred in granting the title companies' motion for summary judgment with respect to appellant's fraudulent misrepresentation claim.
 {¶ 39} For all of the foregoing reasons, appellant's assignment of error is sustained in part and overruled in part, the judgment of the Franklin County Court of Common Pleas is affirmed with respect to appellant's breach of contract claims, and the same is reversed with respect to appellant's fraudulent misrepresentation claims, and this cause is remanded for further proceedings.
Judgment affirmed in part, reversed in part and cause remanded.
Bowman and Brown, JJ., concur.
[1] Northwest Title and Title Link are referred to collectively, infra, as "the title companies."
[2] The trial court referred to this claim as "intentional misrepresentation," and the parties have interchangeably used both the trial court's terminology, as well as the term "fraud," in their briefs. It is clear that the trial court and the parties considered appellant's second cause of action to be the same as that which we term "fraudulent misrepresentation" herein. Fraud can be based on a representation or a concealment. See Burr v.Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69; Russ v.TRW, Inc. (1991), 59 Ohio St.3d 42. The terms "fraud" and "intentional misrepresentation" have been used interchangeably by the courts in cases where an intentional misrepresentation of a fact forms the basis for a cause of action for fraud, as in the present case. See, e.g., Atram v. Star Tool Die Corp. (1989),64 Ohio App.3d 388; Doyle v. Fairfield Machine Co., Inc.
(1997), 120 Ohio App.3d 192; Nilavar v. Osborn (1998),127 Ohio App.3d 1; Welfley v. Vrandenburg (Mar. 29, 1996), Franklin App. No. 95APE11-1409.
[3] Appellant's argument regarding breach of contract contains fleeting references to breach of fiduciary duty; however, because appellant never pled this cause of action, we, like the trial court, do not address it.
[4] Even if the burden had so shifted, appellant's affidavit demonstrates the existence of a genuine issue of fact respecting whether Williams made a representation regarding the sale proceeds.