OPINION
{¶ 1} Defendant-appellant, Stephen A. Lambert, appeals from a judgment of the Franklin County Court of Common Pleas finding him liable for fraud and conversion and awarding damages to plaintiffs-appellees, Bruce and Elizabeth Deitrick. For the following reasons, we affirm.
 {¶ 2} Lambert is the president, chief executive officer, and sole shareholder of American Mortgage Solutions, Inc. ("AMS"), which operated as a mortgage banker. In *Page 2 
June 1999, Chuck Linscott, a loan officer for AMS, approached his friend, Bruce Deitrick, with an investment opportunity. Linscott proposed that Deitrick loan AMS $30,000, which AMS would hold in an escrow account for 90 days. Deitrick agreed, and through subsequent deals, eventually loaned AMS a total of $50,000. AMS encountered financial problems, resulting in its inability to repay Deitrick. After AMS reneged on its contractual obligations, Deitrick and his wife filed suit against AMS, Linscott, and Lambert, alleging claims for breach of contract, fraud, conversion, and breach of fiduciary duty.
 {¶ 3} During a bench trial, Deitrick testified that he initially loaned AMS $30,000 so that AMS could facilitate a construction loan for a client of Homes of America, Inc. ("Homes of America"), a construction company in which Lambert was the sole shareholder. Before he lent AMS the money, Deitrick met with Linscott and Lambert. Deitrick testified that during the meeting, Lambert assured him that his money would be placed in an escrow account, that it would not be at risk, and that he could not lose his principal.
 {¶ 4} On June 16, 1999, the Deitricks and Lambert signed a contract entitled "Assignment of Deposit/Agreement," which provided that the Deitricks would loan AMS $30,000 and that AMS would deposit that money into "the escrow account of AMS" for no more than 90 days. AMS also agreed to pay the Deitricks interest at the rate of five percent per month.
 {¶ 5} Sometime after the parties executed this first agreement, Linscott contacted Deitrick to inform him that AMS needed to retain the money in the escrow account for more time. Deitrick consented to an extension, and he and Lambert signed a "Re-Assignment of Deposit/Agreement" on November 11, 1999. This second agreement provided that AMS would retain Deitrick's $30,000 in "the escrow account of AMS" for an *Page 3 
additional 120 days. Additionally, AMS agreed to continue to pay Deitrick interest at a rate of five percent per month.
 {¶ 6} Linscott then asked Deitrick if he would be willing to invest $15,000 more with AMS. Deitrick agreed. On December 8, 1999, he and Lambert executed an "Assignment of Deposit/Note," wherein AMS agreed to place Deitrick's $15,000 into "the escrow account of AMS" for no more than 180 days and to pay Deitrick interest at a rate of three percent per month.
 {¶ 7} In the spring of 2000, Linscott told Deitrick that AMS could no longer pay Deitrick the interest on the loans at the contractual rates. Linscott offered instead to pay Deitrick two percent per month on the entire $45,000 Deitrick had loaned AMS. Deitrick asked Linscott if AMS would pay three percent per month if he increased the loan amount to $50,000. Linscott agreed. The resulting fourth agreement, entitled "Extension of Deposit/Note," provided that Deitrick would increase the amount "in the account of AMS" to $50,000 and that AMS would pay three percent per month in interest. Both Deitrick and Lambert signed this fourth agreement.
 {¶ 8} AMS' financial condition worsened, and in October 2000, Lambert told Deitrick that AMS had spent the $50,000 that Deitrick had loaned it. Moreover, Lambert explained that AMS was on the verge of bankruptcy and could not repay Deitrick. Lambert offered to sell Deitrick three properties he owned at less than their appraised value so that Deitrick could recoup some of his loss. Leery of investing any more money, Deitrick declined. Deitrick never recovered any of the principal he loaned to AMS.
 {¶ 9} Lambert's recollection of events differs from Deitrick's. Lambert testified that during his initial meeting with the Deitricks, he told them that he would be depositing their $30,000 in an escrow account maintained by Midland Title, not AMS. Lambert, in *Page 4 
fact, did just that. However, the money did not remain in the Midland Title escrow account. In October 1999, Lambert withdrew the $30,000 and gave it to the Homes of America client in return for a second mortgage on the house that Homes of America built for the client. Lambert testified that he met with Deitrick to explain this transaction, and he believed that Deitrick understood that a note from the client replaced the money in the escrow account.
 {¶ 10} Although Lambert deposited the first $30,000 AMS received from Deitrick into an escrow account, he deposited the other $20,000 into AMS' general account, over which he had sole check-writing authority. Notably, Lambert admitted that AMS did not maintain an escrow account in 1999 or 2000 but, instead, used the escrow accounts of various title agencies.
 {¶ 11} Lambert also admitted that AMS never repaid any of the $50,000 Deitrick loaned it. Ultimately, the IRS and creditors laid claim to all of AMS' assets.
 {¶ 12} After the close of evidence, the trial court found AMS and Lambert liable to the Deitricks, but granted judgment in favor of Linscott. The trial court subsequently issued findings of fact and conclusions of law specifying that Lambert committed both fraud and conversion, and awarding the Deitricks damages in the amount of their lost principal, plus interest.[1]
 {¶ 13} Lambert now appeals from that judgment, and assigns the following errors:
 [1.] THE DECISION OF THE TRIAL COURT THAT STEPHEN LAMBERT IS PERSONALLY LIABLE ON THE *Page 5 
DEBT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 [2.] THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION OF EXTRINSIC EVIDENCE TO CONTRADICT THE INTENT OF THE PARTIES TO THE WRITTEN CONTRACT.
 [3.] IT WAS PLAIN ERROR FOR THE TRIAL COURT TO ALLOW THE INTRODUCTION OF EXTRINSIC EVIDENCE TO CONTRADICT THE INTENT OF THE PARTIES TO THE WRITTEN CONTRACT.
 [4.] THE DECISION OF THE TRIAL COURT THAT STEVE LAMBERT IS PERSONALLY LIABLE FOR CONVERSION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 14} By his first assignment of error, Lambert argues that because the evidence adduced at trial does not prove that he made any misrepresentations, the trial court erred in entering judgment against him on the fraud claim. We disagree.
 {¶ 15} In reviewing the determination that Lambert defrauded the Deitricks, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 81. If the evidence is susceptible to more than one interpretation, we must construe it consistent with the trial court's judgment. Cent. Motors Corp. v. PepperPike (1995), 73 Ohio St.3d 581, 584.
 {¶ 16} To prove fraud, a plaintiff must demonstrate: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or *Page 6 
with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation; and (6) a resulting injury proximately caused by the reliance. Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475;Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55. Generally, promises or representations concerning future actions or conduct cannot serve as a basis for fraud. Martin v. Ohio State Univ.Found. (2000), 139 Ohio App.3d 89, 98. Such statements are merely opinions or predictions, not fraudulent misrepresentations. Id. See, also, Hoyt v. Nationwide Mut. Ins. Co., Franklin App. No. 04AP-941,2005-Ohio-6367, at ¶ 36; Yo-Can, Inc. v. Yogurt Exchange, Inc.,149 Ohio App.3d 513, 2002-Ohio-5194, at ¶ 43. However, a plaintiff may prevail upon a claim for promissory fraud if he proves that the defendant made apromise without the present intention of performing. Interstate GasSupply, Inc. v. Calex Corp., Franklin App. No. 04AP-980, 2006-Ohio-638, at ¶ 85; Langford v. Sloan, 162 Ohio App.3d 263, 2005-Ohio-3735, at ¶ 14; Hoyt, at ¶ 36; Applegate v. Northwest Title Co., Franklin App. No. 03AP-855, 2004-Ohio-1465, at ¶ 21-23; Rodgers v. Custom Coach Corp.
(June 22, 2000), Franklin App. No. 99AP-1167. See, also, Coal Resources,Inc. v. Gulf Western Industries, Inc. (C.A.6, 1985), 756 F.2d 443, 446
("[M]aking a contractual promise with no present intention of performing it constitutes promissory fraud in Ohio."). When a person " `makes [a] promise of future action, occurrence, or conduct, and * * * at the timehe makes it, has no intention of keeping his promise,' " that person misrepresents his existing state of mind and present intent.Martin, supra, at 98, quoting Tibbs v. Natl. Homes Constr. Corp. (1977),52 Ohio App.2d 281, 287. (Emphasis sic.) " `Since a promise necessarily carries with it the implied assertion of an intention to perform[,] it follows that a promise made without such an intention is fraudulent * * *. This *Page 7 
is true whether or not the promise is enforceable as a contract.' "Applegate, supra, at ¶ 22, quoting 4 Restatement of the Law 2d, Torts (1977), Section 530, Comment c.
 {¶ 17} In the case at bar, the statements that the Deitricks rely upon to prove fraud are all promises of future action. Thus, we must examine the record for competent, credible evidence that Lambert did not intend to keep his promises when he made them.
 {¶ 18} During Lambert's first meeting with Deitrick, Lambert told Deitrick that his $30,000 would be placed in an escrow account, that it would not be at risk, and that he could not lose his principal. Lambert then deposited the $30,000 in Midland Title's escrow account, ensuring that Deitrick would not be exposed to risk or suffer the loss of his principal. Based upon Lambert's actions, we find that the evidence establishes that Lambert intended to honor his promises when he made them and, thus, no fraud arose out of Lambert's first meeting with Deitrick.
 {¶ 19} The remaining promises that serve as the basis of the Deitricks' fraud claim are all contained within the parties' agreements. Lambert asserts that he cannot be personally liable for fraud based upon those contractual promises because he entered into each agreement on behalf of AMS and so indicated by signing as "Stephen A. Lambert, CEO/President." Generally, a party signing a contract as a corporate officer is not individually liable on the contract. Spicer v. James
(1985), 21 Ohio App.3d 222, paragraph one of the syllabus. Nonetheless, that corporate officer can be individually liable in tort if the promises contained in the contract are fraudulent. Yo-Can, Inc., supra, at ¶ 47 (" `Directors and corporate officers generally may be personally liable for fraud even though the corporation may be liable also.' ");Heritage Funding and Leasing Co. v. Phee (1997), 120 Ohio App.3d 422,430 ("Ohio law recognizes that corporate officers may be liable in their individual capacity for acts of fraud."). Personal liability attaches *Page 8 
when a corporate officer engages in fraud, even if he commits the fraud while in the course of his corporate duties. Krieger Ford, Inc. v. ChaseMotors, Inc. (Aug. 3, 1999), Franklin App. No. 98AP-982. Thus, although the Deitricks cannot recover against Lambert for the breach of the agreements, they can recover against Lambert for any fraud he committed when he signed the agreements.
 {¶ 20} In the parties' first agreement, the June 16, 1999 "Assignment of Deposit/Agreement," Lambert promised to deposit the Deitricks' $30,000 in "the escrow account of AMS." However, at the time Lambert signed the first agreement, AMS did not maintain an escrow account and, instead, used title companies' escrow accounts. Therefore, Lambert did not have the means necessary to comply with his promise when he made it. Further, in his trial testimony, Lambert contended that he "had to" deposit the $30,000 into Midland Title's escrow account, apparently because the financing deal for the Homes of America client required him to deposit the money there. This evidence serves as proof that Lambert always planned to deposit the $30,000 in the escrow account of Midland Title, not AMS. Based upon this evidence, a reasonable fact finder could find that Lambert lacked any intention to perform his promise to deposit the money in "the AMS escrow account" when he made it. Thus, we conclude that the promise constitutes a misrepresentation.
 {¶ 21} In the parties' second agreement, the November 11, 1999 "Re-Assignment of Deposit/Agreement," Lambert promised to continue to maintain the $30,000 "in the escrow account of AMS." At the time Lambert made this promise, he had already withdrawn the $30,000 from the Midland Title escrow account. Consequently, Lambert could not have had the present intention of maintaining the money in any escrow account, much less AMS' escrow account, when he signed the second agreement. Therefore, we *Page 9 
conclude that the promise to maintain the $30,000 in the AMS escrow account constitutes a misrepresentation.
 {¶ 22} In the parties' third agreement, the December 8, 1999 "Assignment of Deposit/Note," Lambert promised to place $15,000 in the AMS escrow account for no more than 180 days. Not only did AMS lack an escrow account when Lambert executed this third agreement but, also, Lambert never attempted to open an AMS escrow account. Rather, immediately upon receiving the $15,000, Lambert deposited it into AMS' general account. Therefore, competent, credible evidence supports the conclusion that Lambert never intended to deposit the $15,000 in "the AMS escrow account" and, thus, his promise to do so constitutes a misrepresentation.
 {¶ 23} In the final agreement between the parties, the April 6, 2000 "Extension of Deposit/Note," Lambert promised to add $5,000 to the $45,000 already in "the account of AMS." Unlike the earlier agreements, the final agreement does not refer to the relevant account as "theescrow account of AMS." (Emphasis added.) Consequently, Lambert contends that the trial court erred in finding that the final agreement contained a misrepresentation. After all, Lambert asserts, he did deposit the money in "the account of AMS;" namely, its general account.
 {¶ 24} Deitrick, however, testified that based upon the parties' course of dealing, he understood the final agreement to contain a promise that Lambert would maintain the entire $50,000 investment in the AMS escrow account. If the final agreement contained such a promise, then it would be competent, credible evidence of a misrepresentation. Lambert signed this final agreement knowing that AMS did not maintain an escrow account, and his actions subsequent to signing demonstrate that he had no intention of ever depositing the money into an escrow account, much less an AMS escrow account. *Page 10 
 {¶ 25} In order to determine which party's interpretation of the final agreement is correct, we must decide Lambert's second and third assignments of error. In those two assignments of error, Lambert argues that the final agreement is plain and unambiguous and, thus, the parol evidence rule bars any consideration of the parties' prior course of dealing in interpreting the final agreement. Lambert contends that, because the Deitricks' interpretation of the final agreement depends upon inadmissible parol evidence, it must be rejected.
 {¶ 26} During trial, Lambert did not object to the introduction of parol evidence. Generally, the failure to object to possible error results in a waiver of the issue on appeal. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121. In the absence of an objection, an appellate court may review the record for plain error but will only find plain error "where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." Id. Appellate courts apply the plain error doctrine "only in the extremely rare case involving exceptional circumstances." Id. at 122.
 {¶ 27} According to the parol evidence rule, " `absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, quoting 11 Williston on Contracts (4 Ed.1999) 569-570, Section 33:4. However, when an agreement is ambiguous, a court may consider parol evidence, i.e., other agreements or any other extrinsic evidence, to ascertain the parties' intent. Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, at ¶ 12; Shifrin v. Forest City Enter., Inc. (1992),64 Ohio St.3d 635, 638. Notably, in such situations, parol evidence is admissible *Page 11 
to interpret, not contradict, the terms of the agreement. OhioHistorical Soc. v. Gen.Maintenance and Eng. Co. (1989),65 Ohio App.3d 139, 146.
 {¶ 28} In the case at bar, Lambert promised to add $5,000 to the $45,000 already in "the account of AMS." Lambert interprets the operative phrase to mean "the general account of AMS," while the Deitricks interpret it to mean "the escrow account of AMS." Because the language of the contract is susceptible to these two conflicting but reasonable interpretations, it is ambiguous. Central Funding, Inc. v.CompuServe Interactive Services, Inc., Franklin App. No. 02AP-972, 2003-Ohio-5037, at ¶ 42. Therefore, it was not plain error for the trial court to consider parol evidence in determining the meaning of the final agreement. Accordingly, we overrule Lambert's second and third assignments of error.
 {¶ 29} As we have concluded the trial court could consider parol evidence, we can now resolve Lambert's first assignment of error. Until the final agreement, Lambert had explicitly promised to deposit the $45,000 Deitrick had loaned AMS into the AMS escrow account. Thus, in promising that the additional $5,000 would join the $45,000 already loaned, Lambert was promising to deposit the entire $50,000 in the AMS escrow account. As we held above, making such a promise constitutes a misrepresentation.
 {¶ 30} Based upon the foregoing, the Deitricks presented competent, credible evidence that Lambert made four fraudulent misrepresentations for which he is personally liable. Accordingly, we overrule Lambert's first assignment of error.
 {¶ 31} Given our resolution of the first three assignments of error, Lambert's fourth assignment of error is moot. Therefore, we do not address the merits of that assignment of error. *Page 12 
 {¶ 32} For the foregoing reasons, we overrule Lambert's first, second, and third assignments of error, and we overrule Lambert's fourth assignment of error as moot. Further, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
FRENCH and McGRATH, JJ., concur.
[1] Judge Martin signed the findings of fact and conclusions of law for Judge O'Grady, the judge who heard the evidence and entered judgment. During oral argument, Lambert's attorney argued that we should not consider the findings of fact as support for the judgment because they were decided by a judge who had not presided over the trial. We do not find any merit to this argument. Judge Martin did not make any decisions relative to the findings of fact and conclusions of law but, rather, merely signed them on behalf of Judge O'Grady, who remained the decision maker. Such a practice does not adversely affect the validity of the judgment. Caldwell v. Ohio State Univ., Franklin App. No. 01AP-997, 2002-Ohio-2393, at ¶ 44-45. *Page 1