[Cite as *Retail Recovery Serv. of New Jersey v. Conley*, 2010-Ohio-1256.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

RETAIL RECOVERY
SERVICE OF NJ,

      PLAINTIFF-APPELLEE,                        CASE NO.  10-09-15

      v.

TERESA A. CONLEY,                           O P I N I O N

      DEFENDANT-APPELLANT.

---

**Appeal from Celina Municipal Court**
**Trial Court No. 08CVF00460**

**Judgment Reversed and Cause Remanded**

**Date of Decision:   March 29, 2010**

---

APPEARANCES:

    *Teresa A. Conley,* **Appellant**

    *Jackson T. Moyer* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Teresa A. Conley, appeals the judgment of the Celina Municipal Court of Mercer County granting summary judgment in favor of Plaintiff-Appellee, Retail Recovery Service of NJ (hereinafter "Retail Recovery"), in the amount of $851 plus interest of 15% and costs. On appeal, Conley asserts that the trial court erred in granting summary judgment in favor of Retail Recovery because there were genuine issues of material fact; that the trial court committed prejudicial error in disregarding defects in the chain of title; that the trial court erred in disregarding Retail Recovery's lack of a valid assignment and evidence that it owned the account at issue; that the trial court erred in awarding damages that were not sufficiently proven or itemized; that the trial court erred in awarding interest at a rate that exceeded the statutory rate; and, that the trial court erred in disregarding Retail Recovery's failure to produce the cardholder agreement for the account. Finding that there were genuine issues of material fact, we reverse the judgment of the trial court.

{¶2} In June 2008, Retail Recovery filed a complaint against Conley alleging that Household Bank issued a credit card to Conley; that Conley used the card, thereby becoming liable for the charges and becoming bound by the terms and conditions of the cardholder agreement; that Retail Recovery purchased Conley's account from Household Bank and was now the legal owner of the

account; that Retail Recovery was owed principal of $851.22 and accrued interest of $301.73, for a total of $1,152.95 plus future interest at a rate of 15%. To its complaint, Retail Recovery attached the affidavit of its "authorized representative," attesting that affiant maintained the books and records of Retail Recovery; that affiant had personal knowledge of account transactions kept in the ordinary course of business; that affiant reviewed the books and records, which reflected that Conley owed an outstanding balance of $851.22, plus interest accruing at 15% per annum since January 31, 2006; and, that the account originated with Household Bank, which sold and transferred the account to Retail Recovery. Additionally, Retail Recovery attached to its complaint a "Balance Summary" reflecting that Conley owed principal of $851.22, a "new balance" of $1,111.83, and future interest at a rate of 15%. Thereafter, Conley filed a pro se answer to Retail Recovery's complaint.

{¶3} In July 2008, Conley filed a pro se amended answer, denying Retail Recovery's allegations, or asserting lack of knowledge toward them, and asserting as defenses that the complaint failed to set forth facts sufficient to state a claim upon which relief could be granted, and that there was a failure of consideration, as there was never an exchange of money or an item of value between Retail Recovery and Conley.

**{¶4}** In February 2009, Conley filed a pro se motion seeking admissions and moving to dismiss the case on the basis that Retail Recovery failed to set forth facts sufficient to state a claim upon which relief could be granted; that the affidavit attached to the complaint was false, as the authorized representative of Retail Recovery was not an employee of the original creditor and would not have personal knowledge of the account; that there was no consideration or exchange of value between Conley and Retail Recovery; and, that Retail Recovery failed to document the chain of title through which it acquired the account. Thereafter, Retail Recovery filed a memorandum contra to Conley's motion asserting that her motion to dismiss should be denied because Retail Recovery's complaint set forth facts sufficient to state a claim upon which relief could be granted; that the affidavit attached to the complaint was not false and was made with personal knowledge via information provided about the account by the original creditor; and, that, although there had been no exchange of value between Retail Recovery and Conley, Retail Recovery owned the account as demonstrated by submitted documents. To its memorandum contra, Retail Recovery attached copies of bills of sale purportedly establishing the chain of title and its right to collect on the account.

**{¶5}** In June 2009, the trial court denied Conley's motion to dismiss.

{¶6} In September 2009, Conley field a pro se motion for summary judgment, arguing that there were no genuine issues of material fact and she was entitled to judgment as a matter of law on the basis that Retail Recovery did not produce evidence sufficient to allow a trier of fact to find in its favor; that Retail Recovery failed to produce evidence establishing a valid assignment of the account; that the copies of the bills of sale produced by Retail Recovery were "unauthenticated" in that they did not contain Conley's name, account number, or the amount due, and did not meet evidentiary standards under Civ.R. 56(C) and (E).

{¶7} Thereafter, Retail Recovery also filed a motion for summary judgment, asserting that there were no genuine issues of material fact and it was entitled to judgment as a matter of law on the basis that Conley's use of the credit card established a contract between her and the creditor; that Ohio law did not require Retail Recovery to produce a signed or written application in order to collect on the account; that Retail Recovery was entitled to the contract interest rate from the date the account became due; and, that copies of an accounts receivable record generally are sufficient to prove an account under Ohio law. To its motion, Retail Recovery attached the affidavit of an unnamed record custodian[1] attesting that the following were true based upon "his/her review of business

---

[1] The affidavit is signed; however, the signature is not legible and a printed name does not appear within the affidavit.

records kept under his/her case, custody and control, and reflect business transactions kept in the ordinary and regular course of business of [Retail Recovery] or its predecessor(s) in interest:" that Conley applied for and was issued a credit card by Household Bank that included terms and conditions; that Conley used the credit card and thereby became bound by the terms and conditions; that the books and records of Retail Recovery reflected there was an outstanding principal on the credit card of $851.22 plus interest at a rate of at least 15% since January 31, 2006, which Conley agreed to pay by her acceptance and use of the credit card; that Retail Recovery purchased and was assigned the account; that Conley defaulted on the obligation created by the card's terms and conditions according to Retail Recovery's business records submitted and provided as part of the purchase of the account; and, that the documents attached were true and accurate copies of business records relating to the account, incorporated by reference. Attached to the affidavit were multiple bills of sale purportedly reflecting that the title to the account was transferred in the following order: (1) from HSBC Card Services (III), Inc., to CACH, LLC, which was not notarized, (2) from CACH, LLC, to Worldwide Asset Purchasing, LLC, which was notarized, (3) from Worldwide Asset Purchasing, LLC, to West Asset Management, Inc., which was not notarized, and, (4) from West Asset Management, Inc., to Retail Recovery, which was notarized. None of the bills of sale specifically referred to

Conley or the account number; however, each purported to convey "all right, title and interest of Seller in and to those certain Accounts as defined in the Agreement" or in an "exhibit". Also attached to the affidavit was a "Balance Summary" stating that the original creditor was Household Bank, that the "new balance" was $1111.83, and that the charge-off date was January 31, 2006, when the principal balance was $851.22. The balance summary contained Conley's name, address, and the last four digits of the account number. Further attached was the notarized affidavit of an individual attesting to be the record keeper for "HSBC Bank Nevada, N.A.", stating that the attached records were true and accurate copies pertaining to Conley's account at HSBC, including "Orchard Bank Master Card # ************5821"; that the account was obtained online, leaving no physical copy of an application; and, that the records consisted of billing documents from February 23, 2005, through June 23, 2005. These monthly statements attached to the HSBC affidavit provided Conley's name and address, the account number ending in 5821, and varying "nominal annual percentage" rates of 24.15%, 24.40%, 24.65%, and 26.99%. The statement dated March 23, 2005, contains a notation that "Effective March 1, 2005, your credit card, formerly issued by Household Bank (SB), N.A., will be issued by HSBC Bank Nevada, N.A. Your account is serviced by our affiliates – Household Credit Services, Inc. and/or Household Credit Services (II), Inc. – who will change their names,

effective March 1, 2005 to HSBC Card Services, Inc. and HSBC Card Services (II) Inc." The last statement provided, dated June 23, 2005, reflected a "new balance" of $242.99.

{¶8} In September 2009, the trial court granted Retail Recovery's motion for summary judgment, awarding it $851.22, plus interest since January 31, 2006, at a 15% interest rate, plus court costs. Additionally, the trial court denied Conley's motion for summary judgment.

{¶9} It is from the trial court's grant of summary judgment to Retail Recovery that Conley appeals, presenting the following pro se assignments of error for our review.

### Assignment of Error No. I

**THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST THE DEFENDANT AS THERE ARE GENUINE ISSUES OF MATERIAL FACT.**

### Assignment of Error No. II

**THE LOWER COURT COMMITTED PREJUDICIAL ERROR IN DISREGARDING THE DEFECTS IN THE CHAIN OF TITLE OF THE CLAIM BY RETAIL RECOVERY SERVICE OF NJ.**

### Assignment of Error No. III

**THE LOWER COURT ERRED IN DISREGARDING APPELLEE'S LACK OF A VALID ASSIGNMENT AND EVIDENCE THAT THEY [SIC] ARE THE PROPER HOLDER OF THE ACCOUNT.**

*Assignment of Error No. IV*

**THE LOWER COURT ERRED IN AWARDING AN AMOUNT WHEN DAMAGES HAVE NOT BEEN PROVEN OR ITEMIZED SUFFICIENTLY TO ALLOW INDEPENDENT SUMMARIZATION.**

*Assignment of Error No. V*

**THE LOWER COURT ERRED IN THAT THE INTEREST RATE AWARDED EXCEEDS THE STATUTORY RATE OF OHIO.**

*Assignment of Error No. VI*

**THE LOWER COURT ERRED IN DISREGARDING THE LACK OF A GOVERNING AGREEMENT OR TERMS AND CONDITIONS RULING THE ALLEGED ACCOUNT.**

{¶10} Due to the nature of Conley's arguments, we elect to address her first through third assignments of error together, and her fourth through sixth assignments of error together.

*Standard of Review*

{¶11} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶25, citing *State ex rel. Cassels v.*

*Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 222, 1994-Ohio-92.

Summary judgment is appropriate when, looking at the evidence as a whole: (1)

there is no genuine issue as to any material fact; (2) reasonable minds can come to

but one conclusion and that conclusion is adverse to the party against whom the

motion for summary judgment is made; and, therefore, (3) the moving party is

entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem.*

*Corp.*, 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue

must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65

Ohio St.3d 356, 358-59, 1992-Ohio-95.

{¶12} The party moving for summary judgment has the initial burden of

producing some evidence which demonstrates the lack of a genuine issue of

material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. In doing

so, the moving party is not required to produce any affirmative evidence, but must

identify those portions of the record which affirmatively support his argument. Id.

at 292. The nonmoving party must then rebut with specific facts showing the

existence of a genuine triable issue; he may not rest on the mere allegations or

denials of his pleadings. Id.; Civ.R. 56(E).

*Assignments of Error Nos. I, II, and III*

{¶13} In her first, second, and third assignments of error, Conley contends

that the trial court erred in granting summary judgment in Retail Recovery's favor

because there were defects in Retail Recovery's chain of title for the account, and, therefore, Retail Recovery failed to demonstrate a valid assignment. Specifically, Conley argues that the bills of sale Retail Recovery entered into evidence were insufficient to demonstrate the chain of title because they did not specifically name her as responsible for the account, did not list the account number, and did not list the amount due; that several of the bills of sale were not notarized or sworn; and, that no assignments from Orchard or Household Bank, the original credit card issuer, appeared in the chain of title. Additionally, Conley argues that the affidavit of Retail Recovery's employee was insufficient to authenticate the bill of sale documents and incorporate them by reference because that employee could not have "personal knowledge" of all of the sales. Retail Recovery responds that it properly established chain of title and authenticated the bill of sale documents via an affidavit of its authorized representative, which incorporated the documents attached under the business records exception to the hearsay rule. Additionally, in response to Conley's argument that no assignments from Orchard or Household Bank appeared in the chain of title, Retail Recovery asserts that both Household Bank and Orchard Bank were divisions of "HSBC", which is illustrated on one of the monthly statements that was attached to its motion for summary judgment.

{¶14} First, we consider whether the bills of sale attached to Retail Recovery's motion for summary judgment were properly authenticated and incorporated into the record.

{¶15} Civ.R. 56(C) provides that the trial court consider the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact." A document that does not fit within a category listed in Civ.R. 56 may be introduced as evidentiary material supporting a motion for summary judgment where it is incorporated by reference in a properly framed affidavit. Civ.R. 56(E); *Gen. Motors Acceptance Corp. v. Hollanshead* (1995), 105 Ohio App.3d 17, 20; *Polanco v. Asbestos Corp., LTD*, 3d Dist. No. 11-07-13, 2009-Ohio-85, ¶14. The incorporated document must be properly authenticated to be of the evidentiary nature required by Civ.R. 56(C). *Hollanshead*, 105 Ohio App.3d at 20.

{¶16} Civ.R. 56(E) further provides that, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." Courts have found that the personal knowledge requirement of Civ.R. 56(E) is satisfied where the affiant asserts personal

knowledge and the nature of the facts involved and the identity of the affiant "creates a reasonable inference that the affiant has personal knowledge of the facts in the affidavit." *Bank One, N.A. v. Lytle*, 9th Dist. No. 04CA008463, 2004-Ohio-6547, ¶13, citing *Bank One, N.A. v. Swartz*, 9th Dist. No. 03CA008309, 2004-Ohio-1986, ¶14. Further, courts have found that affidavits attesting to personal knowledge regarding business records kept in the ordinary course of business activity that were in the affiant's immediate control are admissible under the business records exception. *Lytle*, 2004-Ohio-6547, at ¶13, citing *Countywide Home Loans, Inc. v. Rodriguez*, 9th Dist. Nos. 03CA008345, 03CA008417, 2004-Ohio-4723, ¶14.

**{¶17}** Here, we find that Retail Recovery's employee's affidavit was sufficient to demonstrate that the bills of sale were business records kept in the ordinary course of Retail Recovery's business activity, as it asserted personal knowledge and created a reasonable inference that the affiant had personal knowledge of the facts set forth in the affidavit. See Civ.R. 56(E); *Lytle*, 2004-Ohio-6547, at ¶13. Thus, the bills of sale were properly authenticated by the affidavit and incorporated into the record.

**{¶18}** Next, we turn to the issue of whether Retail Recovery demonstrated the chain of title of the account and that it possessed a valid assignment of the

account, leaving no genuine issues of material fact as to whether it was entitled to collect on the account.

{¶19} Initially, we note that Conley has argued that nothing in the record or purported chain of title demonstrates that Orchard or Household Bank, the original issuer of the credit card, assigned the account to another entity. However, Retail Recovery attached to its motion for summary judgment a monthly credit card statement dated March 23, 2005, which provided that "Effective March 1, 2005, your credit card, formerly issued by Household Bank (SB), N.A., will be issued by HSBC Bank Nevada, N.A. Your account is serviced by our affiliates – Household Credit Services, Inc. and/or Household Credit Services (II), Inc. – who will change their names, effective March 1, 2005 to HSBC Card Services, Inc. and HSBC Card Services (II) Inc." Additionally, the subsequent monthly statements reflect that Conley continued to use the card subsequent to the assignment. We find that this document was sufficient evidence to demonstrate that Orchard or Household Bank assigned Conley's account to HSBC Card Services, Inc., which appears as the first seller in the chain of title documents, and that Conley's continued use of the card indicated her acceptance. The remaining chain of title documents, however, are more troubling.

{¶20} Civ.R. 10 governs forms of pleadings and provides, in pertinent part, that "[w]hen any claim or defense is founded on an account or other written

instrument, a copy of the account or written instrument must be attached to the pleading. If the account or written instrument is not attached, the reason for the omission must be stated in the pleading." Civ.R. 10(D)(1). Courts have found that actions to collect on a credit card balance constitute actions "on an account" for purposes of this requirement in Civ.R. 10(D)(1). *Capital One Bank v. Toney*, 7th Dist. No. 06-JE-28, 2007-Ohio-1571, ¶34; *Capital One Bank (USA), N.A. v. Heidebrink*, 6th Dist. No. 0T-08-049, 2009-Ohio-2931, ¶28. Although Civ.R. 10 does not define what constitutes a "copy of the account", regarding the type of evidence required to support a motion for summary judgment, the Fifth Appellate District has set forth the following summary:

> **In an action on an account, when an assignee is attempting to collect on an account in filing a complaint, the assignee must 'allege and prove the assignment.' In other words, in order to prevail, the assignee must prove that they are the real party in interest for purposes of bringing the action. An assignee cannot prevail on the claims assigned by another holder without proving the existence of a valid assignment agreement.**
>
> **In order to establish a prima facie case for money owed on an account, '[a]n account must show the name of the party charged and contain: (1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due.' '[A]n action upon an account may be proved by the introduction of business records showing the existence of the account.'**

(Citations omitted.)  *Worldwide Asset Purchasing, LLC v. Sandoval*, 5th Dist. No. 2007-CA-00159, 2008-Ohio-6343, ¶¶26-27.  See, also, *Toney*, 2007-Ohio-1571, at ¶36.

{¶21} In *Natl. Check. Bur. v. Ruth*, 9th Dist. No. 24241, 2009-Ohio-4171, the Ninth Appellate District reversed a trial court's grant of summary judgment to a creditor on the basis that it had failed to establish a clear chain of title, partly based on the fact that the bill of sale purporting to demonstrate chain of title indicated the seller bank was conveying to the purchaser bank "accounts * * * described in Exhibit 1 attached hereto," where no such exhibit was attached to the bill of sale in the record.  2009-Ohio-4171, at ¶7.  Similarly, in *Unifund CCR Partners Assignee of Palisades Collection, LLC v. Hemm*, 2d Dist. No. 08-CA-36, 2009-Ohio-3522, the Second Appellate District found that a genuine issue of material fact existed as to the owner of the account where the bill of sale stated it pertained to accounts described in a section of the sales agreement, but did not include that section of the sales agreement.  Although *Unifund*, supra, involved two different accounts with the same defendant-debtor, we do not find that the trial court's decision was dependent on that fact.

{¶22} Here, Retail Recovery attached to its motion for summary judgment multiple bills of sale including, in the following order: (1) from HSBC Card Services (III), Inc., to CACH, LLC, (2) from CACH, LLC, to Worldwide Asset

Purchasing, LLC, (3) from Worldwide Asset Purchasing, LLC, to West Asset Management, Inc., and, (4) from West Asset Management to Retail Recovery. None of the bills of sale refers specifically to Conley or her account number; however, each purports to convey "all right, title and interest of Seller in and to those certain Accounts as defined in the Agreement" or as attached in an "Exhibit." However, the referenced agreements and exhibit were not attached to the bills of sale or the motion for summary judgment. In light of *Ruth* and *Unifund*, supra, because the bills of sale did not specifically refer to Conley's account, we cannot find that Retail Recovery has demonstrated a clear chain of title and a valid assignment of Conley's account. Accordingly, we find that a genuine issue of material fact exists as to whether Retail Recovery possessed a valid assignment of the account, and corresponding right to collect on it, and that the trial court erred in granting summary judgment in Retail Recovery's favor.

{¶23} Accordingly, we sustain Conley's first through third assignments of error.

*Assignments of Error Nos. IV, V, and VI*

{¶24} In her fourth assignment of error, Conley contends that the trial court erred in awarding judgment of $851.22 because Retail Recovery did not itemize or sufficiently prove that amount. Specifically, Conley argues that the original complaint filed by Retail Recovery did not demonstrate the amount due and that

there was no proper itemization or accounting demonstrating how it calculated the claimed principal, late fees, over-limit charges, and interest.

{¶25} In her fifth assignment of error, Conley argues that the 15% interest rate the trial court awarded to Retail Recovery exceeds the statutory rate of interest, and that no evidence was presented, other than an affidavit of Retail Recovery's employee, to establish the rate of interest. Retail Recovery responds that, because this action was based upon an "instrument of writing" under R.C. 1343.03, it was entitled to an interest rate of 15% per annum as of the date the account became due.

{¶26} In her sixth assignment of error, which is interrelated with her fourth and fifth assignments of error, Conley argues that the trial court erred in disregarding the fact that Retail Recovery was unable to produce the cardholder agreement to establish the terms and conditions of the account. Conley essentially argues that Retail Recovery introduced no evidence of how it calculated the balance due, including over-limit fees and late fees.

{¶27} Retail Recovery responds that no cardholder agreement was provided to it by the original creditor upon its purchase of the account, but that a valid contract was created upon the issuance of the credit card and Conley's subsequent use of the card as demonstrated by the monthly statements. Retail Recovery contends that the monthly statements demonstrate that Conley failed to

make a monthly payment and incurred both late and over-limit fees, but that she continued using the card as indicated by subsequent statements. Thus, Retail Recovery contends, Conley accepted the terms set forth by the original creditor, including the stated balance, interest rate, and the late and over-limit fees. Additionally, Retail Recovery responds that it took reasonable steps to obtain documentation to prove the amount due and owing, and received sworn documentation from an authorized representative of the original creditor attesting that the amount due was $851.22; that it was not required to provide a copy of every statement throughout the life of the account; and, that there was no evidence that Conley objected to the sworn balance or to any previous balance during the time the account was open.

{¶28} R.C. 1343.03(A) provides that, when an account becomes payable upon an instrument of writing, "the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." Additionally, several appellate districts have found that Civ.R. 10(D)(1) does not require a plaintiff-creditor to attach copies of every credit card statement issued to the defendant-borrower. See *Capital One Bank v.*

*Nolan*, 4th Dist. No. 06CA77, 2008-Ohio-1850, ¶10; *Citibank (South Dakota), N.A. v. Eckmeyer*, 11th Dist. No. 2008-P-0069, 2009-Ohio-2435, ¶18.

**{¶29}** The Sixth Appellate District has recently held, based upon the Supreme Court of Ohio's Decision in *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259 (holding that monthly invoices detailing the interest rate did not constitute an enforceable contract), that a plaintiff-creditor cannot prove an interest rate merely by producing account statements reciting an interest rate, where it does not demonstrate that the interest rate was a term assented to by the parties in the written contract, such as by producing the terms of the underlying cardholder agreement. *Heidebrink*, 2009-Ohio-2931, at ¶¶36-43. Additionally, the Sixth District went on to apply the same rationale to the defendant-debtor's argument that the creditor had not introduced sufficient evidence that its over-limit fees and late fees were terms of an agreed-upon contract, finding that the plaintiff-creditor had not shown that the specific fees were terms of a contract between it and the defendant-debtor. *Heidebrink*, 2009-Ohio-2931, at ¶43. Finally, also regarding interest rate issues, the Second Appellate District has found that a genuine issue of material fact exists where the documents in the record show varying interest rates, even where the plaintiff-creditor seeks to recover the lowest or less than the lowest interest rate. *Hemm*, 2009-Ohio-3522, at ¶18.

**{¶30}** Here, Retail Recovery failed to produce the underlying cardholder agreement containing the terms and conditions of the account to establish the interest rate and the method of calculating late and over-limit fees. Instead, Retail Recovery produced monthly statements from February 23, 2005, through June 23, 2005, reflecting interest rates varying between 24.15%, 24.40%, 24.65%, and 26.99%, and provided the affidavit of its unidentified record custodian asserting that Retail Recovery's books and records reflected an interest rate of "at least 15%" since January 31, 2006. The monthly statements also reflected that Conley incurred various late and over-limit fees. As in *Heidebrink* and *Hemm*, supra, we find that a genuine issue of material fact exists as to what interest rate applied to Conley's account. Additionally, following the reasoning in *Heidebrink*, we find that, after the Supreme Court of Ohio's decision in *Minster Farmers*, supra, Retail Recovery has failed to present sufficient evidence demonstrating that Conley assented to the terms regarding the various fees, as it did not produce the cardholder agreement, but only several monthly statements. Thus, we find that a genuine issue of material fact exists as to the balance owed on the account.

**{¶31}** Accordingly, we sustain Conley's fourth through sixth assignments of error on the bases articulated in our analysis.

**{¶32}** Having found error prejudicial to the appellant herein, in the particulars assigned and argued in the first, second, third, fourth, fifth, and sixth

assignments of error, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW and PRESTON, J.J., concur.**

**/jlr**