[Cite as *Ocwen Loan Servicing, L.L.C. v. Graf*, 2018-Ohio-2411.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ocwen Loan Servicing, LLC, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 17AP-361 |
| v. | : | (C.P.C. No. 16CV-2542) |
| David M. Graf et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on June 21, 2018

**On brief:** *Blank Rome, LLP, Chrissy Dunn Dutton,* and *John R. Wirthlin,* for appellee. **Argued:** *John R. Wirthlin.*

**On brief:** *Legal Aid Society of Columbus,* and *Leslie Varnado, Jr.,* for appellants David M. Graf and Michelle Graf Crawford. **Argued:** *Leslie Varnado, Jr.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendants-appellants, David M. Graf ("Graf") and Michelle Graf Crawford ("Crawford"), appeal from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Ocwen Loan Servicing, LLC ("Ocwen"). For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 30, 2009, Graf and his late wife, Donna Graf (the "Grafs"), executed a note in favor of GMAC Mortgage ("GMAC") in the original amount of $120,421 and a mortgage pledging the Grafs' new residence at 3590 Rolling Hills Lane, Grove City,

Ohio 43123, as security for the note. The note was insured by the Federal Housing Authority ("FHA"). GMAC subsequently endorsed the note in blank.

{¶ 3} On February 7, 2013, the Grafs were informed Ocwen had assumed the servicing responsibility for their FHA loan. On July 28, 2014, Ocwen sent a letter to the Grove City address notifying the Grafs of a default in payment and informing the Grafs Ocwen intended to accelerate the balance due on the note. There is no dispute in this case the Grafs defaulted on the note. An assignment of the mortgage to Ocwen was recorded on March 24, 2015.

{¶ 4} When Donna Graf passed away, her interest in the property passed to her two children, Crawford and David S. Graf. David S. Graf has not appeared in this action.

{¶ 5} Pursuant to applicable federal regulations, the note and corresponding mortgage places certain limitations on Ocwen's right to declare a default and commence foreclosure proceedings. More particularly, Section 9(d) of the note provides in relevant part: "This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." (Ex. B, attached to Complaint.) The relevant regulations issued by the FHA Secretary appear at 24 C.F.R. 203 et seq. Of critical importance to this action is 24 C.F.R. 203.604, which provides, in relevant part, as follows:

> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.
>
> (c) A face-to-face meeting is not required if:
>
> * * *

> (2) *The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either.*

(Emphasis added.)

{¶ 6}   On March 14, 2016, Ocwen commenced a foreclosure action in the Franklin County Court of Common Pleas against appellants and several other necessary parties.  A copy of the note and mortgage were attached as exhibits to the complaint in support of Ocwen's allegation that it was both the holder of the note at the time it filed the complaint and, as assignee of the mortgage, the party entitled to initiate foreclosure.

{¶ 7}   On March 31, 2016, the Franklin County Treasurer filed an answer to the complaint, and on April 11, 2016, appellants filed their answer.  Among the defenses asserted by appellants were the following: "[Ocwen] is required to provide him with notice of the interview and to actually conduct a face-to-face interview with him prior to filing the foreclosure complaint.  These steps were not taken in this case.  Further, there are no exceptions that waive the requirements of notice and conducting a face-to-face interview. Moreover, the plaintiff failed to issue the required notice informing David M. Graf of the opportunity of having a face-to-face interview.  Both the failure to conduct the required interview and the failure to provide notice of the interview are violations of 24 C.F.R. §203.604(b)."  (Apr. 11, 2016 Answer at ¶ 3.)

{¶ 8}   On January 17, 2017, Ocwen filed a motion for summary judgment on the complaint.  In support of the motion, Ocwen submitted the affidavit of Jesse Rosenthal, Ocwen's contract management coordinator.  Rosenthal's affidavit contains the following relevant averments:

> 1.  * * * I am over the age of eighteen years, and I have personal knowledge of the facts and matters stated herein.  The statements set forth in this Affidavit are true and correct, to the best of my knowledge and belief.
>
> * * *
>
> 14. [P]ursuant to the regulations of the U.S. Department of Housing and Urban Development, no attempts to conduct a face-to-face meeting were necessary and required because the mortgaged property is not within 200 miles of the mortgagee, its servicer or a branch office of either.

(Rosenthal Aff. at 1, 4, attached to Pl.'s Mot. for Summ. Jgmt.)

{¶ 9}   On February 28, 2017, appellants filed a memorandum in opposition to Ocwen's motion for summary judgment and a cross-motion for summary judgment. Appellants submitted the affidavit of Graf both in opposition to Ocwen's motion for summary judgment and in support of appellants' cross-motion for summary judgment.  In his affidavit, Graf avers as follows:

> Having been duly cautioned, the affiant says the following statements are true:
>
> * * *
>
> 4. The plaintiff, Ocwen Loan Servicing, has not pursued reasonable loss mitigation efforts. There should be no forfeiture of my right to own real estate when that is the case.
>
> 5. *The servicer, Ocwen Loan Servicing, does have branch within 200 miles of Columbus in Springfield, Ohio at One Assurant Way, Springfield, Ohio 45505 per its website as noted in Exhibit 2.*
>
> 6. Ocwen Loan Servicing has not provided me with certified notice of a face-to-face interview prior to filing the foreclosure petition.
>
> 7.  Ocwen Loan Servicing has not attempted to provide me with me of notice of loss mitigation by making a visit to my residence prior to filing the foreclosure petition.
>
> 8. Ocwen Loan Servicing has not conducted a face-to-face interview with me prior to filing the foreclosure complaint.

(Emphasis added.)  (Graf Aff. at 1-2, attached to Def.'s Memo. in Opp. to Mot. for Summ. Jgmt.)

{¶ 10} "Exhibit 2" referenced in the affidavit and attached thereto is a two-page document which looks to be a screen shot printed from an Internet website.  The Uniform Resource Locator ("URL") printed at the very top of each page reads: "https://www.ocwencustomers.com/T001/public/contactCompanyPre ...."   Just below the URL is what appears to be an Ocwen corporate logo, a telephone number for "Customer Care," and the words "Contact Ocwen" appearing in large print just above a

solid black line.  Below the line, there are a number of headings such as "Payments," "Customer Inquiries," and "Tax," each with telephone numbers and addresses listed.  The following information appears under the heading "Property Insurance Claims":

> Regular Mail:
> Ocwen Loan Servicing, LLC
> Insurance Loss Drafts
> PO Box 6501
> Springfield, OH 45501
>
> Overnight Mail:
> Ocwen Loan Servicing, LLC
> Insurance Loss Drafts
> One Assurant Way
> Springfield, OH 45505
>
> Telephone:
> Loss Drafts: (866) 825-9266
> Fax: (470) 415-5185
>
> Hours of Operation:
> Monday through Friday 8:00 a.m. to 9:00 p.m. ET
> Saturday 8:00 a.m. to 5:00 p.m. ET
> Sunday 9:00 a.m. to 9:00 p.m. ET

(Ex. 2, Graff Aff.)

{¶ 11} A subscript on page two of the document contains the notation: "NMLS#: 1852 Ocwen Loan Servicing, LLC."  (Ex. 2, Graff Aff.)

{¶ 12} On March 7, 2017, Ocwen filed a reply in support of its motion for summary judgment.  In its reply, Ocwen argued that Graf's averment regarding the existence of a Springfield, Ohio branch office was not based on his own personal knowledge and that the unauthenticated screen shot attached to his affidavit contains inadmissible hearsay. Accordingly, Ocwen maintained Graf's affidavit does not contain admissible evidence to rebut Rosenthal's averment that "the mortgaged property is not within 200 miles of the mortgagee, its servicer or a branch office of either."  (Rosenthal Aff. at ¶ 14.)  In the alternative, Ocwen argued even if the trial court were to consider Graf's affidavit, pursuant to the decision of the Fourth District Court of Appeals in *Wells Fargo Bank, N.A. v. Dumm*, 4th Dist. No. 13CA5, 2014-Ohio-3124, the affidavit does not give rise to an issue of fact

whether the mortgaged property was within 200 miles of an Ocwen "branch office," as that term is used in 24 C.F.R. 203.604(c).

{¶ 13} On April 19, 2017, the trial court issued a decision granting Ocwen's motion for summary judgment and denying appellants' cross-motion for summary judgment. The trial court held the averment in Graf's affidavit regarding the Ocwen office in Springfield, Ohio did not permit the inference that Ocwen had an office at that location that conducted loan originating or loan servicing functions. The trial court found, at best, the affidavit and documents attached thereto established that Ocwen maintained an insurance claims office at the Springfield location. Accordingly, the trial court granted Ocwen's motion for summary judgment and denied appellants' cross-motion for summary judgment.

{¶ 14} Appellants timely appealed to this court from the judgment of the trial court.

## II. ASSIGNMENT OF ERROR

{¶ 15} Appellants sets forth the following assignment of error:

THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND ERRED IN DENYING THE APPELLANTS' CROSS MOTION FOR SUMMARY JUDGMENT.

## III. STANDARD OF REVIEW

{¶ 16} We review a summary judgment motion de novo. *Leonard v. MBB Partnership*, 10th Dist. No. 15AP-956, 2016-Ohio-3534, ¶ 7, citing *Regions Bank v. Seimer*, 10th Dist. No. 13AP-542, 2014-Ohio-95, ¶ 9. Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 17} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). The burden then shifts to the defending party to set forth specific facts showing there is a

genuine issue for trial. *Id.* If the defending party does not so respond, summary judgment, if appropriate, may be entered in favor of the party seeking affirmative relief. *Id.*

## IV.  LEGAL ANALYSIS

{¶ 18} Appellants argue that Graf's affidavit provided admissible evidence the mortgaged property is within 200 miles of an Ocwen "branch office," as that term is used in 24 C.F.R. 203.604(c). Accordingly, appellants argue the trial court erred when it granted summary judgment for Ocwen.

{¶ 19} Ocwen's threshold argument in support of the trial court's ruling is that Rosenthal's affidavit establishes Ocwen does not have any office within 200 miles of appellants' Grove City address and that Graf's affidavit does not contain admissible evidence to rebut the relevant averments in Rosenthal's affidavit. Ocwen maintains because appellants did not produce any admissible evidence to rebut Rosenthal's affidavit, there is no factual issue regarding Ocwen's compliance with 24 C.F.R. 203.604(b). We agree.

{¶ 20} As noted above, Ocwen objected to Graf's affidavit in the trial court on several evidentiary bases including Graf's lack of personal knowledge, his failure to properly authenticate the screen shot attached as an exhibit to his affidavit, and hearsay.[1] "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868, ¶ 17 (10th Dist.), citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992); *Brown v. Cty. Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). "We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it." *Riverside* at ¶ 17, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 21} Pursuant to Civ.R. 56(E), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the

---

[1] We disagree with appellants' contention that Ocwen conceded it has an insurance claims office in Springfield, Ohio. The record shows that Ocwen addressed the information in Graf's affidavit only in furtherance of its alternative argument based on the holding in *Dumm.*

affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." Civ.R. 56(E). Additionally, " '[o]nly facts which would be admissible in evidence can be * * * relied upon by the trial court when ruling upon a motion for summary judgment.' " *Guernsey Bank v. Milano Sports Ents., LLC*, 177 Ohio App.3d 314, 2008-Ohio-2420, ¶ 20 (10th Dist.), quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 631 (1992), fn. 4.

{¶ 22} Civ.R. 56(E) requires affidavits filed in support of or in opposition to summary judgment must be made on personal knowledge. *Applegate v. N.W. Title Co.*, 10th Dist. No. 03AP-855, 2004-Ohio-1465, ¶ 33, citing *State ex rel Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223 (1994). " '[P]ersonal knowledge' " is defined as " 'knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.' " *Applegate* at ¶ 33, quoting *Brannon v. Rinzler*, 77 Ohio App.3d 749, 756 (2d Dist.1991). "An affidavit without an averment of personal knowledge must demonstrate personal knowledge specifically." *Applegate* at ¶ 33, citing *Equitable Assur. Corp. v. Kuss,* 17 Ohio App.3d 136, 138 (3d Dist.1984). " 'Personal knowledge' must be 'gained through firsthand observation or experience.' " (Internal quotation marks omitted.) *Bader v. Ferri*, 3d Dist No. 1-13-01, 2013-Ohio-3074, ¶ 15, quoting *Emerson Family Ltd. Partnership v. Emerson Tool, L.L.C.*, 9th Dist. No. 26200, 2012-Ohio-5647, ¶ 19, quoting *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 26, and *Black's Law Dictionary* 875 (7th Ed.Rev.1999). "The subject of a witness's testimony must have been perceived through one or more of the senses of the witness." (Internal quotation marks omitted.) *Emerson* at ¶ 19, quoting *Bonacorsi* at ¶ 26, and Weissenberger, *Ohio Evidence*, Section 602.1, at 213 (2002). " 'Courts have found that the personal knowledge requirement of Civ.R. 56(E) is satisfied where the affiant asserts personal knowledge and the nature of the facts involved and the identity of the affiant "creates a reasonable inference that the affiant has personal knowledge of the facts in the affidavit." ' " *Bader* at ¶ 15, quoting *Retail Recovery Serv. of New Jersey v. Conley*, 3d Dist. No. 10-09-15, 2010-Ohio-1256, ¶ 16, quoting *Bank One, N.A. v. Lytle*, 9th Dist. No. 04CA008463, 2004-Ohio-6547, ¶ 13.

{¶ 23} In this case, the critical averment in Graf's affidavit is as follows: "The servicer, Ocwen Loan Servicing, does have branch within 200 miles of Columbus in

Springfield, Ohio at One Assurant Way, Springfield, Ohio 45505 per its website as noted in Exhibit 2." (Graf. Aff. at ¶ 5.) This is the only averment in Graf's affidavit that arguably refutes Ocwen's claim that it is exempt from the face-to-face interview requirements of 24 C.F.R. 203.604(b). Graf's affidavit, however, contains no averment he has personal knowledge of any of the facts contained therein.

{¶ 24} In *Wells Fargo v. Phillabaum*, 192 Ohio App.3d 712, 2011-Ohio-1311 (4th Dist.), the issue for the court was whether the mortgagor's affidavit contained admissible evidence the mortgagee/bank maintained a branch within 200 miles of the mortgaged property for purposes of 24 C.F.R. 203.604. The bank argued it fell under an exception to 24 C.F.R. 203.604 based on the affidavit of an employee who averred the " 'mortgaged property is not within 200 miles of the mortgagee, its servicer, or a <u>branch office</u> of either.' " (Emphasis sic.) *Id.* at ¶ 11, quoting 24 C.F.R. 203.604(c). The affidavit in support of the mortgagor's cross-motion for summary judgment stated "Wells Fargo has at least one branch office within 200 miles of my home" and went on to explain he visited that office on at least one prior occasion. *Id.* The Fourth District held appellee's affidavit was sufficient "to carry his initial Civ.R. 56(C) burden and, thus, the burden shifted to the Bank to provide rebuttal materials." *Id.*

{¶ 25} Graf's affidavit does not contain an averment that he has personal knowledge of the information contained therein. The affidavit contains no other facts or information which would permit the inference that Graf has personal knowledge that Ocwen has a branch office in Springfield, Ohio. Unlike the affiant in *Phillabaum,* Graf does not claim to have ever seen or visited the Springfield branch, nor does he claim to have ever contacted the Springfield branch either by telephone or other means. Consequently, Graf's knowledge of the existence an Ocwen Springfield branch office, if any, arises exclusively from the screen shot attached to his affidavit as Exhibit 2.

{¶ 26} In the trial court, Ocwen argued Exhibit 2 was not properly authenticated. We agree.

{¶ 27} "Documents that are 'not sworn, certified, or authenticated by affidavit have no evidentiary value' and cannot be considered by the trial court on summary judgment unless 'the opposing party has raised no objection.' " *Emerson* at ¶ 15, quoting *Green v.*

*B.F. Goodrich Co.*, 85 Ohio App.3d 223, 228 (9th Dist.1993). Evid.R. 901 governs authentication and provides, in relevant part, as follows:

> (A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
>
> (B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

{¶ 28} In *State ex rel. Montgomery v. Villa*, 101 Ohio App.3d 478 (10th Dist.1995), this court noted cases decided under the analogous provisions of Fed.R.Evid. 901 are helpful to the court in determining the requirements for authenticating documentary evidence purportedly taken for commercial websites. *Id.* at 484-85. In *Foreword Magazine, Inc. v. OverDrive, Inc.*, W.D. Mich. No. 1:10-cv-1144 (Oct. 31, 2011), the district court discussed the authentication of screen shots from Internet websites under Fed.R.Evid. 901:

> "The Federal Rules of Evidence, including Rule 901, apply to computer-based evidence in the same way as they do to other evidence." 5 Weinstein's Federal Evidence § 900.05(1)(b) at 900-50 (2d. ed. 2004). The federal district courts have applied the concepts embodied in Rule 901 to questions involving authentication of screen shots from Internet websites. Although records from government websites are generally considered to be self-authenticating, *see Williams v. Long*, 585 F. Supp. 2d 679, 686-89 (D. Md. 2008), exhibits reflecting information from commercial websites must be authenticated by one of the methods allowed by Rule 901, including testimony from a witness with personal knowledge, expert testimony, or reference to distinctive characteristics. *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 556 (D. Md. 2007).

{¶ 29} In *Montgomery,* this court borrowed from federal case law in explaining the burden on the proponent of an Internet website:

> "[T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. *The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.*"

(Emphasis added.) *Id.* at 484-85, quoting *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir.1994).

{¶ 30} In *GMAC Bank v. Bradac*, 8th Dist. No. 105242, 2017-Ohio-7888, the mortgagor submitted her own affidavit attaching numerous exhibits in opposition to the mortgagee's motion for summary judgment. "The facts averred in her affidavit were mostly based on her internet research, which facts she has no personal knowledge of; and the exhibits were mostly unauthenticated documents she printed from various websites." *Id.* at ¶ 16. The mortgagor's affidavit did not contain an averment the exhibits were true and accurate copies of the originals. The trial court struck most of the exhibits.

{¶ 31} The Eighth District Court of Appeals in *Bradac* held that because copies of the assignment of the subject mortgage printed from the Cuyahoga County Fiscal Officer's website were not authenticated with testimony by a witness with knowledge or by a certified copy as required by Evid.R. 901, the mortgagor could not rely on the copies in opposition to the mortgagee's motion for summary judgment. *Id.* at ¶ 22. The Eighth District did not treat the pages allegedly printed from the fiscal officer's website as self-authenticating. *Id.*

{¶ 32} In his affidavit in opposition to Ocwen's motion for summary judgment, Graf does not claim the screen shot attached as Exhibit 2 is a true and accurate copy of information contained on Ocwen's website. Though the screen shot attached to Graf's affidavit contains a URL at the top of each page and some other identifying information, Graf does not provide any factual information in his affidavit which would permit the trial court to determine the screen shot is a true and accurate copy of information on Ocwen's website. Graff does not claim to have ever seen or visited the Springfield branch office at the address listed on the website, nor does he claim to have ever contacted the Springfield branch office at the telephone number listed on the screen shot or by any other means.

Graf's affidavit contains no averment that he personally accessed the information from the URL listed at the top of the screen shot, that he personally downloaded the information to his computer, or that he personally printed the copy of the screen shot attached to his affidavit as Exhibit 2.

{¶ 33} In *Fish v. Stone*, W.D.Tenn. No. 2:17-cv-02093-SHM-EGB (Dec. 29, 2017), a borrower attempted to establish the lender was a "debt collector" in order to show the lender failed to comply with federal debt collection regulations. The debtor submitted a screen shot from the lender's website in support of his motion for summary judgment. In responding to the lender's objection to the website, the debtor attempted to authenticate the document by representing that "the undersigned certifies that the printouts * * * accurately represent the website listed at the top of each page, as it appeared on June 13, 2017." *Id.* The district court held the website information was inadmissible for purposes of summary judgment. In so holding, the court reviewed relevant decisions regarding authentication of websites:

> Courts confronting images that purport to represent websites have held that "[t]o authenticate printouts from a website, the party proffering the evidence must produce some statement or affidavit from someone with knowledge of the website . . . for example a web master or someone else with personal knowledge would be sufficient." *St. Luke's Cataract and Laser Institute v. Sanderson*, 2006 U.S. Dist. LEXIS 28873, 2006 WL 1320242, at *2 (M.D. Fla. 2006) (internal citations and quotation marks omitted); *see also United States v. Bansal*, 663 F.3d 634, 667-68 (Fed. Cir. 2011) (concluding that testimony of a witness with personal knowledge was sufficient to authenticate screenshot images of a website); *Wady v. Provident Life and Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1064 (C.D. Cal. 2002) (sustaining objection to affidavit of a witness attempting to authenticate documents from a website because the affiant had no personal knowledge of who maintained the website). Plaintiff has not offered evidence "sufficient to support a finding that the [website] is what the proponent claims it is." Rule 901(a).

*Id.*

{¶ 34} Though we do not believe Graf needed to present the testimony of the Internet webmaster in order to authenticate the screen shot at issue in this case, Graf's

affidavit essentially treats Exhibit 2 as a self-authenticating document. In our opinion, Graf could not have done less in this case to establish his personal knowledge of the existence of the Springfield office or to establish the screen shot is authentic. Without any averment Exhibit 2 represents a true and accurate copy of information from Ocwen's website, and in the absence of substantial evidence from which the trial court could infer the screen shot was authentic, we find Exhibit 2 is of no evidentiary value and could not be considered by the trial court in ruling on Ocwen's motion for summary judgment. *Bradac.*

{¶ 35} In 2003, this court noted "the authentication requirements for documents copied from the internet may not yet be fully established," and "assurances of authenticity are especially important due to the technical ease of altering downloaded materials." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 10th Dist. No. 02AP-1147, 2003-Ohio-6560, ¶ 70, fn. 1, *affd. in part and rev. in part*, *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508. We also noted "a party's statement that 'I downloaded these pages from the internet' is probably not sufficient to authenticate a downloaded document." *Id.* Here, Graf's affidavit does not even contain an averment he personally downloaded Exhibit 2 from the Internet.

{¶ 36} In 2007, the United States District Court in Maryland decided *Lorraine v. Markel Amer. Ins. Co.*, 241 F.R.D. 534 (D.Md.2007). The *Lorraine* case has been identified as "[o]ne of the earliest and most comprehensive cases addressing the evidentiary hurdles of admitting [electronically stored information]." *State v. Gibson*, 6th Dist. No. L-13-1222, 2015-Ohio-1679, ¶ 38. In *Lorraine,* the district court made similar observations regarding the reliability of electronically stored information:

> "There are many states in the development of computer data where error can be introduced, which can adversely affect the accuracy and reliability of the output. * * * Determining what degree of foundation is appropriate in any given case is in the judgment of the court. The required foundation will vary not only with particular circumstances but also with the individual judge."

*Id.* at 543-44, quoting Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, Section 900.06[3] (Joseph M. McLaughlin Ed., Matthew Bender 2d Ed.1997).

{¶ 37} In this case, Graf's affidavit does not contain an averment he has personal knowledge of the facts and information contained therein. The affidavit is also devoid of even the most basic information necessary to establish his personal knowledge that Ocwen maintained a "branch office" in Springfield. He also failed to aver the screen shot attached to his affidavit as Exhibit 2 was a true and accurate copy of information contained on Ocwen's website and failed to provide substantial evidence from which the trial court could infer the document was authentic. *Montgomery* at 484-85. In light of Ocwen's objections, appellants could not have made less of an effort to make out a prima facie showing of authenticity.

{¶ 38} Moreover, " '[h]earsay statements, unless an exception to the hearsay rule, are not admissible evidence in a summary judgment context.' " *Guernsey Bank* at ¶ 59, quoting *Paulino v. McCary*, 10th Dist. No. 04AP-1186, 2005-Ohio-5920, ¶ 6, fn. 1. *See also Ullmann v. Duffus*, 10th Dist. No. 05AP-299, 2005-Ohio-6060, ¶ 23; *Jones v. Greene Countrie Apts.*, 1oth Dist. No. 94APE01-105 (June 14, 1994). As a general rule, "[p]rintouts from the internet constitute inadmissible hearsay." *Bradac* at ¶ 21, citing *State v. Kinder*, 6th Dist. No. WD-09-086, 2010-Ohio-5173. However, where it is established the website at issue belongs to a party opponent, the statements contained in the website may be non-hearsay under Evid.R. 801(D)(2). *Lorraine* at 567-68. In this instance, Graff's affidavit contains no facts or other information on which it can be inferred the screen shot attached as Exhibit 2 is a true and accurate copy of information contained on Ocwen's website. Accordingly, the information is inadmissible hearsay for which no exception applies. *Kinder*; *Lorraine*.[2]

---

[2] Though appellants argue Ocwen waived the hearsay argument by failing to raise it in the trial court, we note that Ocwen's March 27, 2017 brief in opposition to appellants' motion for summary judgment states at page 6:

> Defendant attested that the business located at Springfield, Ohio is a branch office but provides no actual knowledge of this aside from a website printout that states no such thing. First, the printout is inadmissible hearsay evidence for which Defendant has not even attempted to argue an exception and, therefore, cannot authenticate. Second, he has no actual knowledge as to what the Springfield, Ohio location is. Defendant has made no argument that it is staffed by Plaintiffs personnel who can help him with his mortgage much less provide evidence of the same. As such, his argument that Plaintiff has a branch office within 200 miles should not be considered.

Ocwen makes the same argument regarding the admissibility of Graf's affidavit in its reply brief in support of summary judgment at page 7.

{¶ 39} Appellants' only remaining defense to Ocwen's claims in this case is appellants' assertion that Ocwen failed to comply with the requirements of 24 C.F.R. 203.604(b) prior to commencing the foreclosure action. Pursuant to 24 C.F.R. 203.604(b), Ocwen is exempt from the face-to-face meeting requirement if the mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either. Ocwen produced evidence in support of its motion for summary judgment establishing the absence of a genuine issue of material fact as to the dispositive issue. Rosenthal's affidavit provides "the mortgaged property is not within 200 miles of the mortgagee, its servicer or a branch office of either." (Rosenthal Aff. at ¶ 14.) Graf's affidavit does not contain admissible evidence to rebut Ocwen's evidence, and it is legally insufficient to create a genuine issue of fact for trial. Accordingly, the record supports the trial court's judgment in this case.

{¶ 40} We note that in ruling on the cross-motions for summary judgment, the trial court considered Graf's affidavit without specifically ruling on Ocwen's objections to the admissibility of his averments regarding the Springfield branch office. The trial court held Graf's affidavit did not contain facts which would permit a reasonable inference the purported Ocwen office referenced in the screen shot performs loan originating or loan servicing functions. The trial court determined Graf's affidavit proved only that Ocwen may have a Springfield branch office dedicated to processing insurance claims. Accordingly, the trial court determined, pursuant to *Dumm*, Graf's affidavit was insufficient to rebut Ocwen's evidence the mortgaged property was not within 200 miles of an Ocwen branch office.

{¶ 41} In *Dumm*, the Fourth District Court of Appeals determined the face-to-face meeting requirement of 24 C.F.R. 203.604(b) does not apply unless the mortgaged property is within 200 miles of the mortgagee, its servicer, or a branch office of either that is staffed with personnel qualified to have the "face-to-face" meeting contemplated in the regulation. *Id.* at ¶ 34-36. Relying on *Dumm*, the trial court found Graf's affidavit failed to create an issue of fact whether the Springfield location performed loan originating or loan servicing functions, and Ocwen was entitled to judgment as a matter of law. In the trial court and in this appeal, appellants have argued other appellate court decisions have held the term "branch office" for purposes of 24 C.F.R. 203.604(c) is not limited to offices that perform loan origination or loan servicing functions. *See, e.g., Wells Fargo, N.A. v. Isaacs*,

1st Dist. No. C-100111, 2010-Ohio-5811, ¶ 10; *Phillabaum* at ¶ 14; *HSBC Bank USA v. Teagarden*, 11th Dist. No. 2012-T-0091, 2013-Ohio-5816, ¶ 61.

{¶ 42} This court has not weighed in on the question whether the term "branch office," for purposes of 24 C.F.R. 203.604(c), is limited to a branch office that performs loan origination or loan servicing functions. However, because we find appellants produced no admissible evidence in opposition to Ocwen's properly supported motion for summary judgment to create an issue of fact whether the mortgaged property is within 200 miles of any Ocwen branch office, regardless of the function performed at that office, we need not address appellants' alternative argument in order to affirm the trial court.

{¶ 43} For the foregoing reasons, we hold the trial court did not err when it granted summary judgment in favor of Ocwen, albeit for a different reason than the trial court. Because appellants' cross-motion for summary judgment argues that issues of fact exist regarding Ocwen's compliance with 24 C.F.R. 203.604(b), we hold the trial court did not err when it denied appellants' cross-motion for summary judgment. Appellants' sole assignment of error is overruled.

## V. CONCLUSION

{¶ 44} Having overruled appellants' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and LUPER SCHUSTER, J., concur.

_____